## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TERRY PARSONS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No. GJH-21-1253** |
| **SHANE R. WEBER,** *et al.,* | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

### <u>MEMORANDUM</u>

Plaintiff Terry Glenn Parsons, Jr. filed this civil rights action alleging violations of his civil rights that occurred while he was incarcerated at Western Correctional Institution ("WCI"). ECF No. 1.  Parsons informed this Court that he was released from incarceration by letter dated June 24, 2021.  ECF No. 3.  Parsons originally brought this action solely against Shane R. Weber, Warden of WCI.  The Court found that Parsons's Complaint also stated a claim against C.O. II B. Wilburn, C.O. II E. Layton, and Sgt. W. Logsdon.  ECF No. 4.  This action is currently pending against all four defendants. *Id.*  In his Complaint, Parsons alleges that Defendants Wilburn and Layton assaulted him, using excessive force, and Defendant Logsdon denied him due process during inmate disciplinary proceedings. ECF No. 1-1 at 1, 2; ECF No. 1-2 at 3. The Complaint does not make any specific allegations against Defendant Weber.

On November 19, 2021, the Defendants filed a Motion to Dismiss or, in the alternative, Motion for Summary Judgment.  ECF No. 8.  Parsons was given an opportunity to respond to the motion and has failed to do so.  ECF No. 9.  The Court finds that a hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).

For the reasons discussed below, the Defendants' Motion, construed as a Motion to Dismiss, will be granted due to Parsons's failure to exhaust administrative remedies. Claims against Defendants Weber, Wilburn, Layton, and Logsdon will be dismissed without prejudice.

**I.   Background**

Parsons raises two claims. First, that he was assaulted by Defendants Wilburn and Layton on March 9, 2021, and second that Defendant Logsdon "took [his] good days without allowing [him] to go up for [his] hearing." ECF No. 1 at 2. He seeks monetary damages for each of these claims. *Id.* at 3.

With respect to his first claim, Parsons states that on the morning of March 9, 2021, he received a disciplinary infraction for assaulting a staff member and he was taken to lock up. ECF No. 1-1 at 1. From there, Defendants Wilburn and Layton escorted Parsons to a different cell with his hands cuffed behind his back. *Id.* Then, "[b]efore [they] were in camera view, with a C.O. on each arm … they slammed [Parsons] face first to the ground and began to kick [him] in [his] face, head, neck, back, all over." *Id.* Parsons alleges this attack was in retaliation for his alleged assault on staff. *Id.* at 1-2. He was taken to a cell by himself, and then taken to see a nurse "a little while later." *Id.* He did not make a "statement" about the assault "for fear of what the C.O.s would do" to him if he did. *Id.*

Parsons alleges that he received minimal medical care for his injuries, which included "many episodes of dizziness followed by confusion," "urinating blood for [two] days after," headaches, a black eye, injury to his nose, abrasions on his head, pain in his lower back and legs which caused him to limp, and a possible concussion. *Id*. at 2-3. On March 28, 2021, Parsons states that a nurse found "a large hole in his right ear drum that looks to be a recent injury and is probably to blame for" the dizziness he had been experiencing. *Id*. at 3. As a result of the

assault, he has experienced persistent neck and back pain, sleep disruptions, weight loss, and "constant psychological and emotional distress." *Id.*

In his second claim, Parsons alleges that Defendant Logsdon, acting as Hearing Officer, improperly took his good conduct credits away without giving him an opportunity to appear and be heard at his hearing. As context for his claim, Parsons states that on March 16, 2021, while returning to WCI from the Allegany County Courthouse, he had a conversation with Logsdon about whether he planned to "accept the offer" for the disciplinary infraction he received for the March 9, 2021 incident. ECF No. 1-2 at 1. Parsons told Logsdon that he planned to contest the infraction, to which Logsdon stated that he was going to "take [Parsons's] days for wa[sting] his time," because "his C.O.s wouldn't lie." *Id.* Parsons states that he expected to be mandatorily released from prison the following day, March 17, 2021, based on the good conduct credits he had earned. *Id.* However, his release did not occur as he had expected. *Id.* at 2.

Parsons did not understand why his release date had been changed without his knowledge. *Id.* Ultimately, Parsons spoke with his case manager who told him that a hearing for the disciplinary charges had occurred. *Id.* The disposition included a loss of his good time, and his release date was changed to June 18, 2021. *Id.* Parson states in his Complaint that Hearing Officer Logsdon falsified the paperwork by noting Parsons was not present for the hearing because he refused to attend. *Id.* The hearing paperwork states that Parsons said, "I'm going to court for these tickets tomorrow and I don't have to come and I'm not." *Id.* at 3. Parsons disputes this. He states that defendant Logsdon "should not have unlimited power to lie and do what he wants." *Id.*

Defendants filed a Motion to Dismiss or, in the alternative, for Summary Judgment asserting, among other things, that the Complaint should be dismissed because Parsons has failed

to exhaust his administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  ECF No. 8-1 at 11-14.  Additional facts regarding exhaustion will be provided *infra* as needed.

## II.   Standards of Review

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim.  However, the complaint must allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment.  *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted).

## III.   Discussion

In their Motion to Dismiss or, in the alternative, for Summary Judgment, Defendants raise the affirmative defense that Parsons has failed to exhaust his administrative remedies.  ECF No. 8-1 at 11-14.  Parsons has not responded to Defendant's Motion.

If Parsons's claims have not been properly presented through the administrative remedy

procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42

U.S.C. §1997e.  The PLRA provides, in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  For purposes of the PLRA, "the term 'prisoner' means any person

incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or

adjudicated delinquent for, violations of criminal law or the terms and conditions of parole,

probation, pretrial release, or diversionary program."  42 U.S.C. § 1997e(h).[1]  The phrase "prison

conditions" encompasses "all inmate suits about prison life, whether they involve general

circumstances or particular episodes, and whether they allege excessive force or some other

wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523,

528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff

must nonetheless exhaust before this Court will hear the claim.  *See Jones v. Bock*, 549 U.S. 199,

215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

The exhaustion requirement "allow[s] a prison to address complaints about the program it

administers before being subjected to suit, reducing litigation to the extent complaints are

satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a

useful record."  *Bock*, 549 U.S. at 219.  It is designed so that prisoners pursue administrative

---

[1] Parsons was incarcerated at the time this Complaint was filed. Thus, although he has now been released, the PLRA is applicable to his claims. *See Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), aff'd, 98 F. App'x 253, (4th Cir. 2004) ("…the administrative exhaustion requirement under the PLRA continues to apply when a prisoner is released while his lawsuit still is pending in federal court.").

grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase*, 286 F. Supp. 2d at 530.

Because the Court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in a very real sense, exhaustion prior to federal suit is mandatory. Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). Importantly, however, the court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Moreover, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636. An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at1225); *Kaba*, 458 F.3d at 684.

In Maryland prisons, for the type of grievance asserted by Parsons, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is

denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  Md. Code Regs. § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO").  *See* Md. Code. Ann., Corr. Servs. §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  If the grievance is dismissed, the "order of dismissal shall be forwarded to the complainant within 60 days after the complaint was submitted to the Office."  C.S. § 10-207(b)(2)(i).

Exhaustion requires full completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford,* 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).

With respect to Parson's first claim alleging he was assaulted by Wilburn and Layton, Parsons filed an ARP on March 17, 2021.  ECF No. 8-3 at 5.[2]  Parsons states that the ARP was "administratively dismissed at this level and put under investigation."  ECF No. 1-1 at 1. Parsons "saw the investigator" and "gave him a statement and have heard nothing since."  *Id*. Thereafter, he states that he "appealed the decision to the commissioner of correction and got no response." *Id.*  No date is provided as to when Parsons appealed the decision. On May 12, 2021,

---

[2] Parsons's complaint states that he filed the ARP on March 16, 2021.  ECF No. 1-1 at 1. In any event, the grievance was timely filed within 30 days from the date of the incident that occurred March 9, 2021.

he appealed to the IGO. *Id.* Just five days later, on May 17, 2021, Parsons wrote and dated his Complaint that he filed in this action. ECF No. 1 at 3. His Complaint acknowledges that he was still "waiting for the decision from the IGO" but filed this Complaint before receiving a decision because he had "serious concerns." ECF No. 1-1 at 1. Parsons summarily states that his concerns are his health and safety, that the officers may "fabricate" a ticket and extend his sentence, and retaliate against him. *Id.* Parsons does not indicate that he is unable to access the grievance process.

Defendants present a declaration from Robin Wolford, Deputy Director of the IGO. ECF No. 8-10 at 1. Ms. Wolford states that from March 1, 2021 to the date of her declaration (November 17, 2021), "Inmate Parson [sic] has filed three grievances with the IGO." *Id.* "Grievance 20210448 was filed on April 16, 2021, [and] addressed alleged assaults by correctional officers. Grievance 20201575 was filed on May 17, 2021 and also addressed an alleged assault by correctional officers." *Id.* at 1-2. She goes on to clarify that "with regard to grievance 20210448, on May 24, 2021 I requested that Inmate Parsons provide additional information within thirty (30) days or it would be dismissed." *Id.* at 2. Parsons failed to provide the information requested, and the grievance was dismissed. *Id.* She further states "grievance 20201575 was closed on September 20, 2021." *Id.* Accordingly, Parsons's Complaint to this Court was filed well before he had exhausted his administrative remedies on these claims.[3] Further, the grievance was ultimately denied for failure to follow procedural requirements. "[T]o be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an

_____

[3] Parsons's Complaint is dated May 17, 2021. ECF No. 1 at 3. His envelope was postmarked May 18, 2021. ECF No. 1-3. The filing was docketed by this Court on May 21, 2021. All of these actions predate exhaustion. *See Houston v. Lack*, 487 U.S. 266, 270 (1988); *Lewis v. Richmond Police Department*, 947 F.2d 733, 734-35 (4th Cir. 1991); *United States v. Dorsey*, 988 F. Supp. 917, 919-920 (D. Md. 1998).

opportunity to address the claims administratively. *Id.* at 2384. *Moore*, 517 F.3d at 725 (4th Cir. 2008) citing *Woodford v. Ngo*, 548 U.S. at 89. Thus, while it is clear Parsons made some efforts to have his claims heard, he did not fully exhaust his administrative remedies such that this Court can now hear this claim.

With respect to the claim against defendant Logsdon, pertaining to the hearing deficiencies these claims, too, have not been exhausted. Parsons states that on March 20, 2022, he "put in an ARP about this issue which was dismissed for procedural reasons." ECF No. 1-2 at 2. On March 22, 2022, he "sent a Grievance to the Executive Director of the I.G.O. about this issue, I get no response." *Id.* On March 25, 2021, he wrote "another Grievance to the I.G.O about this again I get no response." *Id.* at 3. The declaration of Robin Wolford indicates that the IGO received a grievance from Parsons on March 31, 2021, addressing "the guilty finding following his infraction hearing."[4] ECF No. 8-10 at 1-2. This grievance, number 20210390, was dismissed on June 8, 2021. *Id*. at 2. Defendants include as an exhibit the letter from the IGO to Parsons explaining that his claim was being dismissed for "wholly lacking in merit" because Parsons failed to establish a claim upon which the IGO could grant relief. ECF No. 8-9 at 1. The letter details that the grievance was received March 31, 2021, and on May 3, 2021, the office sent a letter to Parsons requesting additional information and documentation regarding his exhaustion of administrative remedies available to him in the disciplinary process. *Id.* Parsons responded on May 17, 2021, but failed to provide the requested information. *Id.* Therefore, this grievance was administratively dismissed and closed on June 8, 2021. *Id.* This occurred nearly a month after Parsons filed this action before this Court. Thus, again, while it is clear Parsons

---

[4] Construing this information in the light most favorable to Parsons, this Court will assume this grievance referred to the hearing where Parsons lost good conduct credits, in which he alleges Defendant Logsdon prevented him from participation.

made some efforts to have his claims heard, he did not exhaust his administrative remedies such that this Court can now hear this claim. Further, he again failed to follow the procedural requirements resulting in failure to exhaust the administrative grievance process. This claim also has not been exhausted.

**IV.    Conclusion**

There is no avenue available here by which the exhaustion requirement can be excused. Parsons's claims against all Defendants are unexhausted and will be dismissed without prejudice.[5]

A separate Order follows.

7/14/2022                                                  _____/s/_____
Date                                                      GEORGE J. HAZEL
                                                          United States District Judge

---

[5] The Court need not address the Defendants' additional defenses insofar as claims against them will be dismissed for Parsons's failure to exhaust administrative remedies.